UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
PAMELA J. BLANCO,

07 Civ. 4065 (RPP)

Plaintiff,

**OPINION & ORDER**

-against -

JOHN BROGAN individually and the
VILLAGE OF SCARSDALE, New York,

Defendants.
-----------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

In a complaint filed on May 24, 2007, and amended on August 16, 2007 ("Compl."), Plaintiff Pamela Blanco ("Blanco" or "Plaintiff"), a police officer in the Village of Scarsdale Police Department, brought this action against the Chief of Police John Brogan ("Brogan") and the Village of Scarsdale ("Scarsdale"), alleging that in violation of Title VII, 42 U.S.C. § 1983 and N.Y. Human Rights Law § 296, Defendants discriminated against her on the basis of her gender and unlawfully retaliated against her after she filed a complaint with the EEOC.

In a decision filed on November 21, 2007, Judge Brieant of this Court granted Defendant Brogan's motion to dismiss the amended complaint in all respects, and granted Defendant Scarsdale's motion to dismiss the amended complaint with respect to Plaintiff

complaints of gender discrimination.[1]   See Blanco v. Brogan, 2007 U.S. Dist. LEXIS
86890 (S.D.N.Y. 2007).   The Court did not dismiss Plaintiff's claim that Defendant
Village of Scarsdale unlawfully retaliated against her by passing her over for promotion
to Sergeant after she filed a complaint of gender discrimination with the EEOC in
January 2007.[2]

Discovery closed on November 30, 2008, and on December 3, 2008 this case was
reassigned to this judge.   On January 30, 2009, Defendant Scarsdale filed the instant
motion for summary judgment.   Oral argument on the motion was held on April 3, 2009.
For the reasons that follow, Defendant's motion for summary judgment is granted, and
the Complaint is dismissed.

**1. Factual Background**

a. Overview

Plaintiff has been employed by the Village of Scarsdale as a police officer since
April of 1996.   (Compl. ¶3.)   On January 3, 2007, Plaintiff filed a charge of
discrimination against the Village of Scarsdale with the Equal Employment Opportunity
Commission ("EEOC"), naming both Scarsdale and Chief Brogan as Defendants.

---

[1] Although Plaintiff's discrimination claim was dismissed, this does not affect her ability to pursue her retaliation claim as a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not unlawful "so long as [s]he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law."   See Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 159 (2d Cir. 1999).   Defendant has not claimed that Plaintiff's belief that she had been discriminated against was either held in bad faith or was unreasonable.

[2] Although Judge Brieant dismissed all of Plaintiff's claims against Defendant Brogan, the evidence produced during discovery and the parties' briefing indicates that it was Defendant Brogan and not Defendant Village of Scarsdale who that was the decision maker responsible for the decision of who to promote to Sergeant in May, 2007.   (Def. 56.1 ¶8; Brogan Dep. 164-65.)   In that regard, although technically it is the village manager who makes the final decision of who to promote, it is the police chief who makes a "final recommendation to the village manager."   (Brogan Dep. at 37.)   During Chief Brogan's tenure as police chief, he had promoted ten people to "various positions," and not once had the village manager overruled his recommendation."   (Id. at 38.)   Put simply, Chief Brogan had the "final authority" to select officers for promotion.   (Id. at 37.) Accordingly, for the purposes of this motion, this Court will treat Defendant Brogan as a co-defendant on the retaliation claim.

(Affidavit of Jane Gould in Opposition to Motion for Summary Judgment ("Gould Aff."), dated February 27, 2009, Ex. 2 [EEOC Complaint].)  The EEOC Complaint charged that since Plaintiff's employment by the Scarsdale Police Department began in 1996, she had been "systematically and routinely … skipped for promotion and/or special duty assignments in favor of younger and/or lesser qualified [male] officers."  (Id.)

Specifically, Plaintiff charged that in the summer/fall of 2006, she "was denied two promotional opportunities one of which was given to a male Hispanic with but two years experience on the job; the other was given to a male of Jordanian national origin, who had only two years experience on the job.  In each case [Plaintiff] was better qualified for the appointment."  (Gould Aff., Ex. 2.)  Plaintiff was referring to the fact that she had applied for, but not been given, the assignments of Traffic Enforcement Officer or Field Training Officer.  (Affidavit of Mark Reinharz in Support of Motion for Summary Judgment ("Reinharz Aff."), dated January 30, 2009, Ex. 6 [09/25/09 Deposition of Chief John Brogan] at 29-30.)  Lieutenants Andrew Matturo and Thomas Altizio had made the decisions of whom to assign to those positions.  (Id. at 30-31.)

On January 4, 2007, Plaintiff's counsel, Jonathan Lovett, sent a letter to Chief Brogan, informing him of the EEOC filing, and reminding him that it was "an independently actionable violation of federal law to retaliate against an individual for such a filing."  (Gould Aff., Ex. 3 [01/17/07 Letter].)  Upon receipt of the EEOC Complaint, Chief Brogan informed his "command staff," which included all three Lieutenants, that Plaintiff had filed a complaint with the EEOC.  (Brogan Dep. at 22-23.)  Chief Brogan did not tell any of the Sergeants or police officers that Plaintiff had filed an EEOC Complaint.  (Brogan Dep. at 24.)  There is no evidence in the record that any of

the Sergeants knew that Plaintiff had filed a charge with the EEOC; Plaintiff claims however that it was "possible" that the Sergeants knew because "the lieutenants are known for discussing other people with everyone else on the job." (Reinharz Aff., Ex. 5 [09/16/2009 Deposition of Plaintiff] at 135-39.)

On March 16, 2007, the Scarsdale Police Department filed a response to Plaintiff's discrimination claims with the EEOC, disputing that Plaintiff had been subject to any discrimination on the basis of her gender. (Gould Aff., Ex. 4 [Department's response to EEOC Complaint].) This response was written and signed by Christopher Kurtz, a member of the firm of Bond, Schoeneck & King, and counsel to the Scarsdale Police Department. (Id.) Chief Brogan had reviewed the response letter prior to when it was sent to the EEOC. (Brogan Dep. at 34.)

In April 2007, subsequent to the January 3, 2007 filing of Plaintiff's EEOC complaint, two Sergeant positions became available within the police department. (Brogan Dep. at 43-44.) One of these Sergeant positions was for "Accreditation Manager," which is an "administrative" position that "require[d] direct interaction with supervisors all across the department and village." (Reinharz Aff., Ex. 7 [11/21/08 Deposition of Lt. Altizio] at 45.)

b. The Interview Process

On April 5, 2007, Patrol Officers Newman and Raysor were interviewed for the Sergeants positions by Chief Blanco and the three Lieutenants (Matturro, Altizio, and Clark). (Reply Affidavit of Jessica Satriano in Support of Motion for Summary Judgment ("Satriano Aff."), dated March 13, 2009, Ex. 2 [Interview evaluations of Officer Newman], Ex. 3 [Interview evaluations of Officer Raysor].) Lieutenant Altizio

rated Officer Newman "Highly Recommended" for the Sergeant position, while the other two Lieutenants and Chief Brogan awarded Officer Newman a "Recommended" rating.[3] (Satriano Aff., Ex. 2.)

With regard to Officer Raysor, Lieutenant Altizio rated him "Recommended" for the Sergeant position, while the two other Lieutenants and Chief Brogan gave Raysor a "Highly Recommended" rating. (Satriano Aff., Ex. 3.) Plaintiff had been interviewed in September 2005 for an earlier opportunity for a Sergeant promotion. (Satriano Aff., Ex. 4 [Blanco interview evaluations].) In the 2005 interview process, Chief Brogan and the three Lieutenants all awarded Plaintiff a "Recommended" rating. (Id.) Plaintiff suggests in her opposing brief that the fact that she was not re-interviewed for the May 2007 promotions supports an inference of a retaliatory motive. (Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Pl. Br."), dated February 27, 2009, at 15.) However, Chief Brogan's uncontradicted testimony was that it was "consistent with [the Department's] prior practice" to only interviews candidates for promotion once. (Brogan Dep. at 46.) In support of this statement, Defendant points out that Officer Boss, a male officer who had been previously interviewed for a Sergeant position in 2006, also was not re-interviewed for the Sergeant's position in 2007. (Id. at 45-46.)

c. The Selection Process

On April 13, 2007, the Police Department certified a list of police officer candidates eligible for the two promotions to Sergeant. (Gould Aff., Ex. 5 [certified list].) The following officers were listed on the "Certification of Eligibles," in descending order: Donald Boss (87 points); Plaintiff (83 points); Robert Raysor (81

[3] In descending order, four ratings were available: "Highly Recommended," "Recommended," "Hesitate to Recommend," and "Not Recommended." (Satriano Aff., Exs., 2, 3, 4.)

points); Joseph Dusavage (80 points); James Newman (80 points); Jose Santos (75 points); Craig Keitel (74 points); Terence Ellis (73 points), and; Matthew Miraglia (71 points). (Id.) The top five candidates on the list -- Boss, Plaintiff, Raysor, Dusavage, and Newman -- were eligible for the two promotions.[4] (Brogan Dep. at 45; Gould Aff., Ex. 5.)

At the end of April 2007, a panel of three Lieutenants and ten Sergeants reviewed the application and submitted recommendations to the Chief of Police for the two Sergeant promotions. (Reinharz Aff., Ex. 10 [written recommendations].) All three Lieutenants recommended Officers Raysor and Newman for promotion to Sergeant. (Id.) As for the Sergeants, nine Sergeants recommended Officer Raysor for promotion, two Sergeants recommended Officer Newman, two Sergeants recommended Officer Boss, and one Sergeant recommended Plaintiff. (Id.)

On May 1, 2007, Lieutenants Altizio and Matturro compiled the following chart concerning the candidates eligible for promotion to Sergeant. (Gould Aff., Ex. 7 [Sergeant Candidate Statistical Information Chart].) This chart covering statistical information from January 1, 2004 to May 1, 2007 was submitted to Chief Brogan. (Id.)

| | **Blanco** | **Boss** | **Raysor** | **Dusavage** | **Newman** |
|---|---|---|---|---|---|
| Years of Service | 11 yrs. | 7.4 yrs | 13.3 yrs. | 12.4 yrs. | 10.4 yrs. |
| Career Commendations | 0 | 2 | 6 | 4 | 7 |
| Moving Summonses | 470 | 397 | 310 | 298 | 305 |
| Parking Summonses | 514 | 520 | 498 | 509 | 461 |
| Arrests | 10 | 10 | 4 | 8 | 10 |
| Appearance Tickets | 9 | 16 | 19 | 13 | 11 |

[4] Notably, Officer Boss, the police officer who received the highest score of all the candidates, also was not promoted to Sergeant.

| Sick Days | 30.6 | | | | 1 | | | | 18 | | | | 17 | | | | 19 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sick Breakdown 2004-2007 | 8 | 8 | 11 | 4 | 0 | 1 | 0 | 0 | 9 | 6 | 2 | 1 | 5 | 5 | 6 | 1 | 5 | 6 | 6 | 2 |
| Emergency Personal Days | 13 | | | | 13 | | | | 9 | | | | 7 | | | | 6 | | | |
| E.P Breakdown 2004-2007 | 2 | 5 | 3 | 3 | 3 | 6 | 3 | 1 | 1 | 4 | 4 | 0 | 2 | 3 | 2 | 0 | 2 | 1 | 3 | 0 |
| Specialized Training Certifications | Bicycle Patrol, AED/CPR First Aid | | | | Impaired Driver Recognition, FTO, IDS, Exp Baton Instructor, O.C. Inst, Phys Fitness Inst, Rapid Deploy Inst, Def Tact Inst. | | | | Bicycle Patrol, Def Tact Inst, FTO, O.C. Instructor | | | | Firearms Inst, Impaired Drv Recognition, Rapid Deploy Instructor, AR-15 Armor, Firearms Inst., Precision Rifle, Pistol Armorer, Tactical Pistol | | | | Accident Investigator, Bicycle Patrol, Def Tact Inst, Rapid Deploy Instructor, FBI Survival Inst, PR-24 Inst, Impaired Drv Recognition, Firearms Inst, FTO, IC Spray Instruct, Exp. Baton Instructor. | | | |

On May 23, 2007, Chief Brogan promoted Officers Raysor and Newman to Sergeant. (Brogan Dep. 150-152; Gould Aff., Ex. 5.)  The next day, Plaintiff filed the instant lawsuit based on a right to sue letter for her other claims that she received from the EEOC on April 4, 2007.

**2. Applicable Law**

A. Standard for Summary Judgment

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).  "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986), and an issue of

"material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). All ambiguities must be resolved, and all inferences drawn, in favor of the non-moving party.  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001).

However, a "non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'"  Woodman v. WWOR-TV, 411 F.3d 69, 75 (2d Cir. 2005) (internal citations omitted).  A non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful."  (Id.)  Thus, a non-moving party "must 'set forth specific facts showing that there is a genuine issue for trial.'"  (Id.)

In addition, the Second Circuit has provided specific guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. See, e.g., Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).  Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir.1997); see also Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)).

B. Retaliation

To succeed on a claim of retaliation, a plaintiff must show that 1) the employee engaged in protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action. See Gordon v. New York City Bd. of Education, 232 F.3d 111, 116 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998). A plaintiff's burden at the prima facie stage is *de minimis*. See Richardson v. New York State Dept. of Correctional Serv., 180 F.3d 426, 444 (2d Cir. 1999); see also Treglia v. Manlius, 313 F.3d 713, 719 (2d Cir. 2002). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational find of fact to infer a retaliatory motive." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. Treglia, 313 F.3d at 721; James v. New York Racing, 233 F.3d 149, 154 (2d Cir. 2000). If the employer carries that burden, the burden shifts back to the plaintiff to show that the defendant's explanation was a pretext for retaliation. See Cifra v. GE, 252 F.3d 205, 216 (2d Cir. 2001).

To establish pretext, a plaintiff must produce evidence sufficient to cast doubt that the defendants' proffered reasons are not the real reasons for the adverse employment actions. Jute, 420 F.3d at 173. A plaintiff is not required to disprove the defendants' proffered reasons altogether, however. See Fields v. New York State Office of Mental Retardation and Developmental Disabilities, 115 F.3d 116, 120-21 (2d Cir. 1997). The

third step of the McDonnell Douglas burden shifting analysis may be satisfied "by proving that an impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation. Id. at 120; see also Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995) ("[P]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating factors.'"). Evidence of pretext can either be additional to or the same as the evidence produced with respect to the plaintiff's prima facie case. See Sista v. CDC Ixis, 445 F.3d 161, 173 (2d Cir. 2006).

Lastly, while the ultimate burden of persuasion remains with the plaintiff, these allocations of burdens of production and proof in retaliation cases are not meant to be "rigid, mechanistic, or ritualistic." Sumner v. United States Post Office, 899 F.2d 203, 209 (2d Cir. 1990). Rather, the critical question is whether the plaintiff has presented sufficient evidence from which a reasonable jury could conclude that the defendant intentionally retaliated against the plaintiff for engaging in protected activity. Id.

**3. Application**

A. Plaintiff has presented a *prima facie* case of retaliation.

The evidence presented by Plaintiff establishes a *prima facie* case of retaliation. Plaintiff engaged in protected activity by filing an EEOC Complaint of discrimination on January 3, 2007. Chief Brogan was advised on this protected activity by Plaintiff in early January 2007, when he received a letter from Plaintiff's counsel informing him of the EEOC Complaint. (Brogan Dep. at 19-22.) Chief Brogan shared the information about the EEOC Complaint with his command staff, which consisted of Lieutenant Andrew

Matturro, Lieutenant Thomas Altizio and Lieutenant Bryant Clark.   (Id. at 22.)
Thereafter, in May 2007, Plaintiff suffered an adverse employment action when she was
not promoted to Sergeant.   See Treglia, 313 F.3d at 720 (plaintiff's "claim of
discriminatory failure to promote falls within the core activities encompassed by the term
'adverse action'") (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)); see also
Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (failure to promote is an adverse
employment action).

 Plaintiff has also sufficiently established a causal connection between the
protected activity and the adverse employment action.   "Proof of causal connection can
be established indirectly by showing that the protected activity was followed closely by"
the adverse employment action or by evidence of disparate treatment of fellow similarly
situated employees, Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986),
or directly through evidence of retaliatory animus directed against a plaintiff by the
defendant.   DeCintio v. Westchester County Med. Dep., 821 F.2d 111, 115 (2d Cir.
1987).   To prove causation here, Plaintiff alleges both that the Police Department had a
retaliatory "animus" after she filed her EEOC Complaint, and also that there was a close
temporal proximity between the protected activity (the EEOC Complaint) and the adverse
employment action (the failure to promote)

 In providing evidence of a retaliatory "animus," Plaintiff relies upon the March
16, 2007 Bond, Schoeneck, and King response ("March 16, 2007 letter") to her January
3, 2007 EEOC Complaint.   (Gould Aff., Ex. 4 [Response to EEOC Complaint].)   Citing
a number of examples in the eleven-page letter, Plaintiff contends that this response,
which was filed approximately two months before the promotions to Sergeant were

made, was "nothing more than a smear campaign" that was "replete with irrelevant innuendo and falsehoods."  (Pl. Br. at 8.)  A close examination of the examples cited by Plaintiff, however, provides insufficient evidence that Chief Brogan engaged in a "smear campaign" against her after she filed her EEOC Complaint.

In that regard, Plaintiff contends that in the March 16, 2007 letter to the EEOC, the Department's outside attorneys: falsely claimed that Plaintiff had been "terminated" from her earlier position in the Yonkers police department (Pl. Br. at 8); pointed out that Plaintiff had not received a single award/commendation in her 11 year career despite the fact that commendations are made only upon recommendation from a supervisor (Pl. Br. at 9); made reference to three instances of command discipline related to Officer Blanco that took place more than 10 years prior to the EEOC complaint and hence, were probably irrelevant to any promotion decisions (Pl. Br. at 10); wrote that Plaintiff had been counseled on several occasions by supervisors in 1997-1998; stated that several motorists had filed complaints against Officer Blanco for "rudeness" even though none of those complaints had been sustained; falsely claimed that there was an ongoing investigation into Plaintiff's December 15, 2006 dealings with a motorist even though that investigation had closed on February 19, 2007 (one month prior to when the March 16, 2007 letter was submitted to the EEOC), and; falsely stated that Plaintiff was not one of the "most productive officers in the Police Department in terms of arrests and tickets/summonses."  (Id.)

The initial problem with Plaintiff's ascription of animus to Chief Brogan and the Scarsdale Police Department based on the content of the response letter is that neither the Chief nor the Lieutenants wrote it.  (Brogan Dep. at 34; Altizio Dep. at 24-25; Matturo

Dep. at 16.)  Rather, the letter was drafted and signed by the Village's outside law firm. (Gould Aff., Ex. 4.)   In fact, only Chief Brogan reviewed the response prior to its submission to the EEOC (Brogan Dep. at 34), and there is no indication as to whether Chief Brogan edited the response prior to its submission.

Regardless, the March 16, 2007 letter does not evince a retaliatory animus.  There are some inaccuracies in the letter.   For example, Plaintiff had not actually been terminated from the Yonkers police department.  Rather, she had been asked to resign in lieu of termination based on her failure to disclose her past drug use in her employment application.  (Brogan Dep. at 120.)   Additionally, while the letter claimed that there was an ongoing investigation into Plaintiff's December 15, 2006 dealings with a motorist, this investigation had been closed on February 19, 2007, a month before the March 16, 2007 letter was sent to the EEOC.  (Brogan Dep. at 133-35.)  The letter inaccurately reflected that the investigation into Plaintiff's dealings with a motorist was ongoing because, "as of the date" the information was provided to the attorneys who drafted the letter, the investigation was still open, and it was only after the information had been provided that the investigation was closed.  (Brogan Dep. at 134-35.)  Accordingly, Plaintiff's attempt to ascribe animus to Chief Brogan based on inaccuracies contained within an eleven-page response letter is rejected.

Plaintiff also relies on indirect evidence to establish causation, contending that retaliation can be inferred because the protected activity here was followed closely by the adverse employment action.  Generally, the cases that "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold

that the temporal proximity must be 'very close.'" Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001); see also Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001) ("plaintiff can indirectly establish a causal connection to support a … retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action'") (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).

However, this Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." See Gorman-Bakos, 252 F.3d at 554.   And in cases like this where there is a four to five month gap between the protected activity and the adverse employment action, the courts of this Circuit have found this time period to be both sufficient and insufficient to establish the requisite causal connection.  See, e.g., Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (Plaintiff did not establish causal connection where three and a half months elapsed between complaint and adverse action); Chamberlin v. Principi, 247 F. Appx. 251, 254 (2d Cir. 2007) (passage of five months was insufficient to establish causal connection between protected activity and adverse action); Khan v. Abercrombie & Fitch, 2003 U.S. Dist. LEXIS 16329, at *9 (S.D.N.Y. 2003) (five-month gap was insufficient to establish causal connection); Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479, at *18 (S.D.N.Y. 2000) (four-month gap is insufficient evidence of a causal connection); James v. Newsweek, 1999 U.S. Dist. LEXIS 15588, at *15 (S.D.N.Y. 1999) (four months too remote for causal connection); but see Hernandez v. Kellwood Co., 2003 U.S. Dist. LEXIS 17862, at *20 (S.D.N.Y. 2003) (where plaintiff was fired

five months after filing her EEOC charge, court found a "close enough temporal connection to establish" a causal connection).

That there could be a causal connection between the protected activity and the adverse employment action is buttressed by the particular circumstances of this case. In that regard, police departments generally have well-defined procedures and labor union agreements which prevent management from taking arbitrary adverse employment actions against their employees. Accordingly, it would have been very difficult for the Police Department here to retaliate against Plaintiff during the time period except in terms of promotion. Simply put, the Sergeant promotion process that took place in April/May 2007 may well have been the first available opportunity for Defendant to retaliate against Plaintiff.

The Second Circuit and the Courts of this District have found a causal connection under similar circumstances. See, e.g., Grant v. Bethlehem Steel, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding that plaintiff established causal connection despite an eight month lapse in time when the defendant was unable to retaliate in the manner alleged any sooner); Quinby, 2007 U.S. Dist. LEXIS 28657, at *38-39 (issue of material fact on causation element of retaliation claim despite eight month temporal gap where employer might have waited until first opportunity presented itself to retaliate); see also McKenzie v. Nicholson, 2009 U.S. Dist. LEXIS 5285 (E.D.N.Y. 2009) (ruling on motion to dismiss that there still could be causal connection despite 13-month gap between EEO complaint and alleged failure to promote because this was the first opportunity the defendant had to retaliate).

Accordingly, the totality of the evidence suggests that at the very least whether Defendant retaliated against Plaintiff for filing a complaint with the EEOC is an issue of fact. See Quinby v. WestLB, 2007 U.S. Dist. LEXIS 28657, *37 (S.D.N.Y. 2007) ("because the Second Circuit has found somewhat lengthy periods of time sufficient to suggest a causal relationship under certain circumstances, court must consider a time lapse on a case-by-case basis in light of the entire record"). Thus, Plaintiff has put forth a *prima facie* case of retaliation.

B. Defendant has Provided Legitimate, Non-Retaliatory Reasons for why Plaintiff was Not Promoted by Chief Brogan in May 2007.

In determining who to promote to Sergeant in May 2007, Chief Brogan testified that he considered the applicants' "overall body of work, their interviews, their attendance, their commendation … [and] a large weight is generally given to recommendations from immediate supervisors and lieutenants," although the Chief is not "required" to follow any "particular recommendations." (Brogan Dep. at 39-40, 108, 165.)

As for deciding who to promote for the first Sergeant position, that of patrol Sergeant, all three of the Department's Lieutenants recommended Officer Raysor for promotion. (Reinharz Aff. Ex. 10 [recommendations].) Further, of the ten Sergeants who wrote recommendations, nine of those Sergeants recommended Officer Raysor. (Id.) In contrast, none of the Lieutenants and only one Sergeant recommended Plaintiff for this opening. (Id.) Additionally, as Chief Brogan explained, it was clear that Officer Raysor was marked for promotion even prior to being recommended by his superiors.

> Q: Did you have a thought about who you were going to promote prior to the time when you received the recommendation?

> A: (Chief Brogan): In some cases, I did; and some cases, I don't.
>
> Q: I'm talking about the 2007 promotions.
>
> A: I had strong feelings about Officer Raysor.
>
> Q: What were those feelings based on?
>
> A: Those feelings were based on my observations of his performance for the past 13 years, 14 years, however long he's been there.

(Brogan Dep. at 111-12.) Later in his deposition, Chief Brogan explained that in making his decision to promote Officer Raysor, he considered "the officer's overall body of work, productivity, attendance." (Brogan Dep. at 164.)

> Chief Brogan: With Officer Raysor, in terms of my recommendation for him, I had considered that I had observed time after time in the public conducting himself just in an exemplary fashion. I've been stopped by the mayor, by the police commissioner, by the human resources director, and they pointed out to me that he conducts himself wonderfully. I have seen him, from his graduation at the police academy, being class spokesman and bringing an entire audience to their feet was what I considered to be great leadership. I've been to many graduations, I never saw a standing ovation given to any class spokesman.
>
> Q: How many years ago was that?
>
> A: That was when he became an officer. That would have been 13 years ago. But I've seen a continuation of that type of behavior on his part. And I've had that continuation – my perception is reinforced by the public, including numerous letters I've received about him over the years about his ability to deal with the public.

(Brogan Dep. at 164-65.) The sentiments of Chief Brogan concerning Officer Raysor were echoed by the other ranked officers in the Department. For example, Lieutenant Clark testified at his deposition that he recommended Raysor because he is a:

> take-charge guy in the field, he's the kind of officer that when a superior gets to the scene there isn't necessarily all that much to do, he already has everything under control and he's already taken the steps that you would have taken as a supervisor, he's a guy who is consistently seeking out

> ways to … improve his own performance, he is held in unbelievable regard by his peers and by the other supervisors.

(Clark Dep. at 19-21.) Lieutenant Altizio confirmed that he recommended Raysor because he has done an "excellent job of maintaining a positive work attitude, an excellent relationship with the public … he's got an excellent demeanor, he's -- he's a very commanding individual, he can get take care of a scene … and he's very dedicated to his work." (Altizio Dep. at 42.) In sum, and as Lieutenant Clark explained, Officer Raysor was promoted because "Officer Raysor was gonna get promoted over anyone, he was an outstanding candidate." (Clark Dep. at 28.)

The second promotion was for that of accreditation manager, the person "responsible for administering the national state accreditation programs [and] scheduling and training." (Brogan Dep. at 112-14.) Chief Brogan testified that he was "open to discussion on the second promotion," and he was considering each of the "other three or four officers." (Brogan Dep. at 112-114.) In making the determination of who to promote, Chief Brogan expected his command staff "to come in and present [their] case as to who … should be promoted and why they should be promoted." (Id. at 113.) All three Lieutenants supported Officer Newman for promotion to this position, and two of the Sergeants supported Office Newman as well. (Reinharz Aff., Ex. 10.)

None of the "lieutenants were particularly supportive" of Plaintiff's promotion to Sergeant. (Brogan Dep. at 115-16; Reinharz Aff. Ex. 10 at 24-25 [Recommendation of Lt. Altizio for Officer Newman].) Lieutenant Altizio was a particularly vocal supporter of Officer Newman's candidacy. He testified that he recommended Officer Newman because:

A. … I thought that he was the best candidate to fill the opening as the department's accreditation manager.  I based that on his work record, his commitment to the department, his professionalism.  Specifically, he has a very good demeanor and gets along well with people, and the support services sergeant/the accreditation manager can be a difficult job because it requires direct interaction with supervisors all across the department and the Village, it also required a commitment through 2011, to stay in the position so that the department could maintain national and state accreditation status, he was willing to commit to it. And it was an usual work assignment, its not regular police work, its mostly administrative, and I felt that he had the -- the administrative skills and the temperament that best suited the position.

Q: Why was it that you didn't recommend Officer Blanco?

A: Because I didn't think that she had the temperament or was best suited for the position.  It requires that you work directly with supervisors across the department and the Village and elicit their cooperation and I didn't think that she had the personality that would best suit that position.  It also required a good deal of commitment to make sure that the assignment or that the – the work was done on a regular basis, that they be a reliable worker, and I don't think that – her attendance record was not as good as the other candidates', and it also required somebody that would excel in a job where you have to write policies and procedures and it required certain administrative skills, and I'm not talking about typing, I'm talking about the ability to interpret – interpret accreditation standards and write policies for your department to be in compliance with these standards while still complying with collective bargaining agreements and New York State Laws.  It's a fairly complex job that's nothing like, you know, any other police assignment.

Q: What did you know about Officer Newman that led you to believe that he was the best person to do the job that you've just described?

A: Well, I knew that he would – I knew that he was committed to it, that he would -- you know, he indicated that he would work the assignment for its required duration, through 2011, I knew that he was -- he had a personality where he has a very easygoing demeanor and he gets along well with most members of the department, and I thought that that was an important factor, because the accreditation manager has to -- cannot succeed in that position without the cooperation of other department members, supervisors, and village officials, so that was a big factor.  I also thought that his attendance and his -- his commitment to the job was very important and I weighed that heavily.  I knew that I could rely on him to fully commit to the assignment to make sure that it got done.

> Q. Did you have some basis to believe that Officer Blanco wouldn't fully commit to any assignment that she was given?
>
> A. I didn't think that she was the best candidate for this assignment. That's not to say that I don't think that's able to commit to any assignment, but for this specific assignment I thought that the interaction with other department supervisors and Village officials, that she was not the best suited candidate for it. I thought that the scheduling or that the requirements of meeting certain deadlines in this assignment required a person to be here on a regular and consistent basis and I thought that her attendance was a factor, whereas officer Newman had a better attendance record, and I felt, in my opinion, that I could count on him to be here to complete the assignment and meet the deadlines.

(Altizio Dep. at 42-46.)

Accordingly, Defendants have put forth legitimate, nondiscriminatory reasons for why Officers Raysor and Newman were promoted, and why Plaintiff was not promoted.

C. Plaintiff has failed to put forth sufficient evidence evincing that Defendant's explanations for not promoting her were a pretext for unlawful retaliation.

The crux of Plaintiff's pretext argument is that the Department's proffered reasons for why she was not promoted were derived from "wholly subjective standards" for judging "employee performance for purposes of promotion." (Pl. Br. at 15-20.) Plaintiff is correct that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion." See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 104 (2d Cir. 2001) (quoting Knight v. Nassau County Civil Serv., 649 F.2d 157, 161 (2d Cir. 1981)); see also Mandell v. County of Suffolk, 316 F.3d 368, 381 (2d Cir. 2003). This is because "any defendant can respond to a [discrimination charge] with a claim of some subjective preference of prerogative and, if such assertions are accepted, prevail in virtually every case." See Byrnie, 243 F.3d at 104 (quoting Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1040 (2d Cir. 1979)).

However, there is nothing unlawful about an "employer's basing its hiring decision on subjective criteria," Byrnie, 243 F.3d at 104, and the Court can discern no reasons why promotions should be treated differently.   As long as an employer's explanation, offered in "clear and specific terms," is "reasonably attributable to an honest even though partially subjective evaluation of … qualifications, no inference of discrimination can be drawn."   Byrnie, 243 F.3d at 104 (quoting Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980)).   Here, Chief Brogan, in making his decision on who to promote to Sergeant, testified that he relied upon a number of factors, some of which were subjective, in making his decision: the officers "overall body of work," their "interviews," "attendance" and "commendations," and lastly, he gave a "large weight" to the officers' "recommendations from immediate supervisors and lieutenants."   (Brogan Dep. at 165.)   These reasons proffered by Chief Brogan were "clear and specific," and moreover, the depositions which Plaintiff took, coupled with the comparison sheet submitted to Chief Brogan by his Lieutenants prior to the Chief's decision-making (Gould Aff., Ex. 7), evince that Chief Brogan's determination of which candidates to promote was "reasonably attributable" to the aforementioned criteria.

In that regard, Officer Blanco was absent from work at a significantly higher rate than Officers Raysor and Newman.   (Gould Aff., Ex. 7.)   Officers Raysor and Newman took 18 and 19 sick days and nine and six emergency personal days, respectively, from January 1, 2004 through May 1, 2007.   In contrast, Officer Blanco took 30.6 sick days and 13 emergency personal days over that same period.   (Id.)   Additionally, Officer Blanco had zero career commendations, while Officer Raysor had six commendations, and Officer Newman had seven commendations.   (Id.)   Hence, on both the objective

attendance and commendation factors, Officers Raysor and Newman were significantly superior to Officer Blanco.

Officers Raysor and Newman also had received higher marks than Plaintiff from their interviews with the three Lieutenants and Chief Brogan.  As noted, Officer Newman had been given an "overall recommendation" of "Highly Recommended" by Lieutenant Altizio and a "Recommended" rating by the two other Lieutenants and Chief Brogan. (Satriano Aff., Ex. 2.)   These "overall" recommendations" were a composite score derived from seven separate "Rating Factors."[5]   Each of the "Rating Factors" was separately graded, and of the three persons who gave Officer Newman an overall "Recommended" evaluation, two rated Officer Newman "Highly Recommended" on two Rating Factors," and one, Chief Brogan, gave Officer Newman a Highly Recommended score on three Rating Factors.  (Id.)  None of the interviewers gave Officer Newman a "Not Recommended" or "Hesitate to Recommend" score in any factor.  As for Officer Raysor, he received a "Highly Recommended" overall rating from three of the four reviewers, and with regard to the fourth interviewer, who gave him a "Recommended" rating, that reviewer awarded him a "Highly Recommended" rating for three of the seven Ratings Factors.  (Satriano Aff., Ex. 3.)  None of the interviewers gave Officer Raysor a "Not Recommended" or "Hesitate to Recommend" score in any factor.  (Id.)

Conversely, for Plaintiff, while all four of the interviewers including Chief Brogan gave her an overall "Recommended" evaluation, one interviewer gave her a "Hesitate to Recommend" rating in one Ratings Factor, and a second interviewer gave her a "Hesitate to Recommend" rating in two Ratings Factors.  (Satriano Aff., Ex. 4

---

[5]  The rating factors were: First Impression, Self-Expression, Self-Confidence, Discretion, Stressful Situations, Attitudes, and General Adaptability to Supervisor Responsibilities.  (Satriano Aff., Ex. 3.)

[Plaintiff's interview evaluations].) Plaintiff was awarded a "Highly Recommend" rating by only two interviewers, each for a single Rating Factor. (Id.) Accordingly, Plaintiff's interview scores were significantly lower than Officers Newman and Raysor.

In his deposition, Chief Brogan testified that he gave a "large weight" to the recommendations from the Sergeants and Lieutenants. As described, all three Lieutenants recommended Robert Raysor and James Newman for promotion to Sergeant, and none recommended Plaintiff. (Reinharz Aff., Ex. 10.) (Id.) Additionally, nine Sergeants recommended Robert Raysor, two Sergeants recommended James Newman, two Sergeants recommended Donald Boss, and one Sergeant recommended Plaintiff. (Id.) Hence, it is evident that Officers Raysor and Newman came much more highly recommended than did Plaintiff.[6]

None of the other objective criteria laid out in the Police Department's "Sergeant Candidate Statistical Information" evinces that Plaintiff should have been promoted over Officers Raysor and Newman. In terms of seniority, Plaintiff had been a police officer for 11 years at the time of the May 2007 promotions; Raysor had been an officer for 13.3 years and Newman had been an officer for 10.4 years. (Gould Aff., Ex. 7.) Further, while Plaintiff had issued higher numbers of moving and parking summonses than Officers Raysor and Newman (id.), her slightly superior production in this regard cannot be said to have been material. Lastly, in terms of "specialized training certifications

[6] Plaintiff hints that the reason her superiors did not recommend her for promotion was because of her pending EEOC Complaint. However, while all three Lieutenants knew about the EEOC Complaint prior to writing the recommendations, no evidence was presented indicating that the Sergeants knew of the EEOC Complaint. (Brogan Dep. at 22-24.) See Laurin v. Pokoik, 2005 U.S. Dist. LEXIS 6728, at *5 (S.D.N.Y. 2005) (to establish case of retaliation, the plaintiff "must demonstrate not only that [the defendant corporation] as an entity knew of [the plaintiff's] engagement in the protected activities, but also that the actual decisionmaker(s) knew about her protected activities as well"); Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006) (plaintiff has failed to establish retaliation because "there is no evidence that any of the decisionmakers was aware of the plaintiff's protected activity").

received," both officers Raysor and Newman had more certifications than Plaintiff, and Officer Newman led all of the other candidates for Sergeant in obtaining training certifications.  (Id.)   Hence, it is apparent that even though some of the metrics used in the promotion process were based on a subjective evaluation of qualifications (i.e. recommendations and interviews), Chief Blanco relied on clear and specific criteria (both objective and subjective) in deciding who to promote to Sergeant.

In attempting to show that Chief Brogan's explanation for promoting Raysor and Newman was a pretext for discrimination, Plaintiff also attacks the deposition testimony of Lieutenants Matturro and Altizio, arguing that the Lieutenants had previously proffered inconsistent reasons for why other officers were given the traffic enforcement and field training positions over Plaintiff in late 2006.  However, even if the Lieutenants' explanations were inconsistent, thereby impugning the Lieutenants' credibility, this is immaterial to the issue at hand of whether Defendant Brogan intentionally retaliated against Plaintiff for submitting a complaint to the EEOC.  Simply put, Lieutenants Matturro and Altizio did not make the decision on whom to promote to Sergeant in May 2007; that decision was made by Chief Brogan.  Plaintiff cannot prove retaliation by questioning the credibility of officers who did not make the decision of whom to promote to Sergeant.

Further, it is well-settled that a plaintiff's broad attack on a witness's credibility cannot establish a dispute of material fact, especially where it is challenged as to things wholly unrelated to the alleged retaliation now at issue.  See, e.g., Island Software & Computer Serv. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present

questions of material fact"); McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999) ("appellee cannot defeat summary judgment … merely by impugning [a witness's] honesty"); Arbitron Inc. v. Tralyn Broad. Inc., 2008 U.S. Dist. LEXIS 55720, *5-6 (S.D.N.Y. 2008) ("inconsistencies between the submissions" of in-house counsel and department director that allegedly "undermine[d] their credibility" insufficient to overcome summary judgment because "[s]ummary judgment is appropriate even where factual issues remain, where those facts are irrelevant or unnecessary to the outcome of the suite under the governing law").

Lastly, that the decision to promote officers Raysor and Newman instead of Plaintiff was not retaliation for Plaintiff's filing of the complaint with the EEOC is bolstered by her own deposition testimony. Initially, when questioned about why she was not promoted, Plaintiff responded that it was due to cronyism and because the Police Department did not want a woman as a supervisor. (Blanco Dep. at 94-95.) Only upon later questioning by her counsel did Plaintiff testify that the Department's decision not to promote her was "partly" in retaliation for having filed the EEOC Complaint. (Blanco Dep. at 131.) Even if credited, such subjective impressions are insufficient to establish pretext. See, e.g., Gumbiner v. Williams-Sonoma, Inc., 2006 U.S. Dist. LEXIS 15783, *17 (S.D.N.Y. 2006) (plaintiff's subjective belief that she was fired because of her religion is insufficient to survive a motion for summary judgment); Foxworth v. Am. Bible Society, 2005 U.S. Dist. LEXIS 16105, *9 (S.D.N.Y. 2005) (plaintiff's subjective belief concerning why she was fired is insufficient to establish pretext); Rivera v. Potter, 2005 U.S. Dist. LEXIS 1416, *4-5 (S.D.N.Y. 2005) (same).

Moreover, after filing the EEOC complaint, Plaintiff "ke[pt] it quiet," and did not inform anyone of the EEOC complaint. (Blanco Dep. at 44, 133.) Indeed, Plaintiff testified that prior to the filing of her lawsuit "nobody really knew about" her complaint. (Id. at 44.) It was only after she filed her lawsuit, which occurred subsequent to the May 2007 Sergeant promotions, that the rest of the Department (including the Sergeants) found out about her EEOC discrimination complaint, when the news of the lawsuit "was in the paper." (Id. at 44, 133.) Accordingly, Plaintiff's own testimony belies any inference that retaliation was responsible for her not being promoted to Sergeant.

In sum, based on all the evidence presented no reasonable jury could find that Defendants Brogan and the Village of Scarsdale intentionally retaliated against Plaintiff for engaging in protected activity, Plaintiff's retaliation claim is dismissed. See Treglia, 313 F.3d at 721 (standard on summary judgment is whether the plaintiff has presented evidence sufficient that a "reasonable jury" could find that the defendant intentionally retaliated against the plaintiff for engaging in protected activity.)

**4. Conclusion**

Defendant's motion for summary judgment is GRANTED, and Plaintiff's Complaint is dismissed in its entirety.

IT IS SO ORDERED.

Dated: New York, New York
May 18, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order faxed to:

Attorney for Plaintiff
Jane Bilus Gould
Lovett & Gould
222 Bloomingdale Road – Suite 305
White Plains, NY 10605
Phone: 914-428-8401
Fax: 914-428-8916

Attorneys for Defendant
Jessica Satriano
Bond, Schoeneck & King, Plc.
1399 Franklin Avenue, Suite 200
Garden City, NY 11530-1679
Phone: 516-267-6300
Fax: 516-267-6301